Argued May 5, affirmed May 26, 1914.

## HORN *v.* DAVIS.

(142 Pac. 544.)

**Appeal and Error—Review—Discretion of Trial Court—Amendment of Pleading.**

1. The refusal of an offer, near the close of the trial, to amend the reply will not be reversed on appeal; the allowance of amendments being within the discretion of the trial court, which is reviewable only for abuse.

Pleading—Amendment During Trial—Statutory Provision.

2. Under Section 102, L. O. L., providing for amendment of pleadings before the trial and during the trial, amendments substantially changing the cause of action or defense cannot be allowed during the trial.

[As to amendment of pleading as requiring new process, see note in Ann. Cas. 1913B, 831.]

Pleading—Reply—Amendment.

3. In an action for money due on a contract for the sale of horses, cattle, and other property, where the plaintiff interposed a general denial to the answer which set up the acceptance of a promissory note in payment and a surrender of the note in settlement of a shortage in the number of horses and cattle, a trial amendment to the reply, alleging that, at the time of the settlement alleged in the answer, plaintiff's wife was not expected to live, and that, before he would gather the horses or look after them, he would let defendant have his note and count it settled, was properly excluded as it failed to set up either duress or undue influence in making the settlement.

Contracts—Validity—"Duress."

4. "Duress" is unlawful constraint whereby one is forced to do some act against one's will, and it may be duress of imprisonment, or by violence, or duress *per minas*, consisting in threats of imprisonment, etc.

[As to what is and what is not duress, see note in 26 Am. Dec. 374.]

Pleading—Issues and Proof—General Denial.

5. Where the reply denies generally every allegation of new matter in the answer, the plaintiff may put in evidence any probative facts tending to disprove the material allegations of the answer.

Contracts—Breach—Actions—Issues and Proof.

6. Duress and undue influence are affirmative defenses which must be specially pleaded, and evidence to establish them is not admissible under a general denial.

Trial—Instructions—Instructions Already Given.

7. When the instructions given cover properly all the issues in the case, the refusal of charges is not error, though they state the law applying to the case clearly.

From Malheur: DALTON BIGGS, Judge.

In Banc.    Statement by MR. JUSTICE RAMSEY.

This is an action by W. T. Horn against Frank Davis, upon a written contract to recover $5,000 alleged to be due the plaintiff. A verdict and a judgment were rendered in favor of the defendant. The

plaintiff appeals.   The facts appear in the opinion of
the court.                                        AFFIRMED.

For appellant there was a brief over the names of
*Mr. George W. Hayes* and *Mr. George E. Davis,* with
an oral argument by *Mr. Hayes.*

For respondent there was a brief over the names of
*Mr. Will R. King* and *Messrs. Brooke & Swagler,* with
an oral argument by *Mr. Ralph W. Swagler.*

MR. JUSTICE RAMSEY delivered the opinion of the
court.

On the 29th day of October, 1909, the plaintiff and
the defendant entered into a written contract for the
sale of certain real and personal property, of which
the following is a copy:

"This agreement, made this 29th day of October,
1909, by and between W. T. Horn of Jordan Valley,
Oregon, party of the first part, and Frank Davis, of
Ontario, Oregon, party of the second part, witnesseth:
That W. T. Horn, the party of the first part, for and
in consideration of the sum of twenty-two thousand
five hundred dollars ($22,500) bargains, sells and con-
veys unto Frank Davis, party of the second part, the
following described real and personal property: [A
ranch of 200 acres is here described.]   Two hundred
and fifty (250) head of range and work horses [de-
scribing brand], one black, brown coach stallion known
as 'Bayuard,' one hundred (100) head of range cattle
[describing brand], wagons, machinery, household
goods, hay and everything on the said ranch which is
used in running and operating same.   It is agreed
that Frank Davis, party of the second part, agrees
to buy the above-described property for the sum of
twenty-two thousand five hundred dollars ($22,500.00)
from the party of the first part, paying for the same,
as follows: Five thousand dollars ($5,000.00) to be

paid down, *five thousand dollars ($5,000.00) to be paid
on January 1st, 1910,* the balance of twelve thousand
five hundred dollars ($12,500.00) to be paid in seven
payments as follows: [Here is set out when these pay-
ments shall be made.]          [Signed]     W. T. Horn.
          "[Signed]     Frank Davis."

This action is brought to recover the said sum of
$5,000 that became due on January 1, 1910, according
to the terms of said contract. The complaint alleges
the execution of said contract and the agreement by
the defendant to pay said sum of $5,000 on January
1, 1910, and that neither said sum nor any part
thereof has been paid, and sets out a copy of said
contract, and alleges that the plaintiff has performed
all the conditions of said contract on his part, and
demands judgment for said sum of $5,000.

The answer denies every allegation of the complaint,
except the first paragraph thereof, and the first sen-
tence of the second paragraph thereof, being that por-
tion of said complaint down to and including the
sentence containing the words "Exhibit A" in line
10.

The answer alleges in substance *inter alia* that on
October 30, 1909, after the execution of said contract,
the defendant, at the request of the plaintiff, made,
executed, and delivered to the plaintiff his promissory
note in writing for the sum of $5,000, due January 1,
1910, and made it payable to the plaintiff, and that
the plaintiff at said time received and accepted said
promissory note in full payment of said sum of $5,000,
payable January 1, 1910, mentioned in said contract,
and in lieu thereof; that, by the execution, delivery,
and acceptance of said promissory note as aforesaid,
said sum of $5,000 mentioned in said contract, and
upon which this action is brought, became and was

fully extinguished, satisfied, and canceled; and that said promissory note was by the plaintiff accepted in lieu thereof, and all liability on the part of the defendant thereon was fully satisfied and canceled. The answer alleges also that thereafter the plaintiff was unable to make full and complete delivery to the defendant of the 250 head of horses and the 100 head of cattle agreed by the plaintiff in said contract to be sold to the defendant and delivered to the defendant, as provided in said contract, a copy of which is attached to the plaintiff's complaint, and hereby referred to, there being a shortage of about 100 head of said horses and 65 head of said cattle, and, by reason of said shortage, plaintiff was unable to deliver said horses and cattle, as provided in said contract; that on or about April 15, 1910, plaintiff and defendant mutually agreed that in full settlement of the failure of plaintiff to make full delivery of said 250 head of horses and 100 head of cattle purchased by defendant from plaintiff, and in full settlement of said shortage of said horses and cattle, plaintiff should cancel, satisfy, and return to defendant said promissory note for the sum of $5,000 above mentioned, and that thereupon, in compliance with said agreement of settlement for said shortage of said horses and cattle, plaintiff did cancel, satisfy, and return to the defendant said promissory note of $5,000 above mentioned; that thereupon and thereby, by mutual agreement between plaintiff and defendant, said promissory note of $5,000 became and was fully paid, satisfied, and discharged and all obligation and liability on the part of defendant to pay said promissory note and said sum of $5,000, as mentioned in said contract, in payment of which said note had been given, was thereby fully

ended, and the same and each thereof fully paid, settled, satisfied, and discharged.

The reply is in the following words:

"Comes now the above-named plaintiff and, replying to the answer of defendant on file herein, denies generally and specifically each and every allegation as contained in the defendant's second affirmative answer and defense."

The jury returned a verdict for the defendant. The plaintiff appeals.

1. When about all the evidence was in, and before the argument began, the counsel for the plaintiff asked the trial court for leave to amend his reply as follows:

"Mr. Hayes: We wish to state in our reply that on this date, the 15th day of April, 1910, the wife of plaintiff was sick, not expected to live; that he had received a telegram of which the defendant was notified, and had notice of it, and that, in a conversation had between them at the time in regard to the settlement, the plaintiff told him that, before he would stay and gather those horses or look after them, *he would let him have his $5,000 note and count it settled* under those conditions, though he wasn't satisfied; that, under this contract of delivery, the defendant himself is the one who should do the riding after them; that he did not ride as he had agreed to do; that he sold the hay off of the farm, and that the horses and cattle starved, and that, if any shortage occurred, it is directly owing to the defendant; that the settlement they have alleged was a settlement obtained under duress, when the life of the plaintiff's wife was weighed against a $5,000 note."

Counsel for the defendant objected to the plaintiff's being allowed to make said proposed amendment, alleging in substance that it would not constitute a sufficient reply; that it came too late; that it would substantially change the issues involved, etc. The trial

court refused to allow the proposed amendment, and this refusal is assigned as error.

The reply filed denied the settlement absolutely, and the case went to trial on the issues thus raised. The application for leave to amend was made during the trial and after about all of the evidence was in. The trial court held that it was made too late. The re-fusal of the court to permit the proposed amendment will have to be approved for several reasons:

(a) The allowance of amendments to pleadings rests in the sound discretion of the trial court (*Wallace* v. *Baisley,* 22 Or. 572, 30 Pac. 432), and this discretion is reviewable by this court only for an abuse thereof. This offer was made near the close of the trial, and we think that there was no abuse of discretion in re-fusing it.

2. (b) Section 102, L. O. L., provides for amend-ments of pleadings *before* the trial begins, and also *during* the trial. Amendments substantially changing the cause of action or the defense cannot be allowed *during* the trial: *Foste* v. *Standard Ins. Co.,* 26 Or. 449 (38 Pac. 617); *Talbot* v. *Garretson,* 31 Or. 265 (49 Pac. 978).

The reply contained an absolute denial of the settle-ment pleaded in the answer. The proposed amend-ment was in the nature of a confession and avoidance, and it would have changed the defense substantially, and hence it could not be permitted to be made during the trial. It could have been allowed before the trial.

3. (c) The complaint is based on the written con-tract by which the defendant agreed to pay the plain-tiff $5,000 on January 1, 1910. The answer alleges that, at the request of the plaintiff the defend-ant executed to the plaintiff his promissory note for said sum of $5,000 in lieu of said promise con-

tained in said written contract to pay said $5,000, and
in satisfaction thereof, and that the plaintiff accepted
said promissory note in satisfaction of said promise,
contained in said contract. The answer alleges also
that the plaintiff was unable to deliver to the defend-
ant all of the 250 head of horses, or all of the 100 head
of cattle mentioned in said contract, and that there
was a shortage of about 100 head of horses and 65
head of cattle that the plaintiff was unable to deliver
to the defendant, of the animals mentioned in the con-
tract, and which the plaintiff attempted by said con-
tract to sell to the defendant, and that in full settle-
ment of said shortage in the said number of horses
and cattle, which the plaintiff was unable to deliver,
it was mutually agreed by the plaintiff and the defend-
ant that the plaintiff should cancel, satisfy, and re-
turn to the defendant said promissory note for $5,000,
and that, in compliance with said agreement of settle-
ment for said shortage, the plaintiff did cancel, satisfy,
and return to the defendant said promissory note for
$5,000, and that, by said facts and agreement, said
promissory note, and said promise to pay said $5,000,
became and were fully paid, satisfied, and discharged,
and all obligation and liability on the part of the de-
fendant to pay said promissory note and said sum of
$5,000, as mentioned in said contract for which said
note was given, were thereby fully paid, satisfied, and
discharged, etc. The plaintiff offered so to amend his
reply as to allege that said settlement was brought
about by duress, and that it was therefore void.

4. Duress is unlawful constraint exercised upon a
man whereby he is forced to do some act against his
will. It may be duress of imprisonment when the
person is deprived of his liberty in order to force him
to compliance, or by violence, beating, or other actual

injury, or duress *per minas,* consisting in threats of imprisonment, etc. Duress may also include the same injuries inflicted upon a man's wife, child, or parent: Black's Law Dictionary (2 ed.), p. 404.

1 Elliott, Contracts, page 238, says:

"Under these later decisions duress may be defined as any course of action or conduct which may actually or reasonably coerce the will of the party oppressed, and exists when the contract results from such coercion. There are two forms of duress. It may be either of the person or of the goods of the party. Duress in either of the foregoing instances may be either actual or threatened. Duress of the person may be accomplished by unlawful imprisonment or violence. This unlawful imprisonment, or violence may be directed directly against the other party to the contract, or to the husband or wife, parent or child, or other near relative of such party": See, also, 14 Cyc., p. 1123.

Duress and undue influence are not the same thing; but the facts that the plaintiff asked to be permitted to include in his reply were neither duress nor undue influence. He desired to allege that his wife was dangerously ill and not expected to live, and that he received a telegram as to her said illness when the settlement was under consideration, and that the defendant had notice thereof, and that he told the defendant, before he would stay and gather the missing horses or look after them, he *would let him have his $5,000 note and count it settled* under those conditions, though he was not satisfied.

The facts that he desired to plead do not show that the defendant exercised any constraint or undue influence upon him. He does not allege that he was forced or even urged to give up the note. It does not appear that the defendant attempted to prevent his

going to his sick wife. He could have declined to give up the note, and have gone to his wife without giving it up. What he offered to put in his reply was no defense to the new matter of the answer. The court properly refused to permit the amendment.

5. The reply denies generally every allegation of the new matter contained in the answer. This denial puts in issue every material allegation of the answer and made it necessary for the defendant to prove each of such allegations. Under the issues thus formed, the plaintiff had the right to put in evidence any probative facts tending to disprove the material allegations of the answer.

31 Cyc., pages 687, 688, says:

"The general rule is that, under the general issue or a general denial, any evidence is admissible which contradicts or *directly* tends to contradict the allegations which the plaintiff must prove in order to sustain his case. It should be noted in this connection that, while there are statements in the cases to the effect that general denial is the equivalent of the general issue at common law, *there is a radical difference between them.* The broader general issues, in fact, go to the cause of action. *But general denials* (under the code practice) *go merely to the precise facts alleged by the opposite party, and no evidence is in general admissible under them which does not tend directly to negative the allegations of the pleadings to which they are directed.*"

Pomeroy's Code Remedies (4 ed.), Section 567, in part says:

"The general denial puts in issue all material averments of the complaint or petition, and permits the defendant to prove any and all facts which tend to negative those averments or some one or more of them. Whatever fact, if proved, would not thus tend to contradict some allegations of the plaintiff's first pleading,

but would tend to establish some circumstance, transaction, or conclusion of fact, not inconsistent with the truth of all those allegations, *is new matter.* * * Such is the nature of the new matter which cannot be presented by means of a *denial, but must be specially pleaded,* so that the plaintiff may be informed of its existence and of the use to be made of it by the defendant.''

Bliss, Code Pleading (4 ed.), Section 327, says:

''The denial may be general or special; the former putting in issue all of the plaintiff's material allegations, and the latter the allegation specially denied. But neither can do more than put them in issue; hence, under the new procedure, the parties never go to trial upon a written affirmation, and denial of certain facts, when the real issues involve the existence of other facts of which no intimation is given in the pleadings. * * Evidence of facts which admit the act charged, but which avoid its force or effect, or which discharge the allegation, is inadmissible'' (unless specially pleaded).

6. Duress is an affirmative defense and must be specially pleaded, and evidence to establish it is not admissible under a general denial: *Nordholt* v. *Nordholt,* 87 Cal. 552 (26 Pac. 599, 22 Am. St. Rep. 268); *Timson* v. *Manufacturers etc. Co.,* 220 Mo. 580 (119 S. W. 565); *Richardson* v. *Hittle,* 31 Ind. 119.

The contract for the settlement of the shortage in the number of horses and cattle that the plaintiff was not able to deliver to the defendant, and for the surrender and satisfaction of the $5,000 note and claim for $5,000 mentioned in the contract annexed to the complaint, was affirmatively pleaded in the answer and generally denied by the reply, and this raised the issue whether the contract of settlement was made. The plaintiff had a right to put in any competent evidence that negatived the making of the contract of

settlement, but as he did not allege in his reply that the plaintiff was induced to enter into said contract for said settlement and for the cancellation and satisfaction of said promissory note and the $5,000 demanded by the complaint, by duress, or undue influence, evidence to prove duress or undue influence was inadmissible.

Section 725, L. O. L., declares that:

"Evidence shall correspond with the substance of the material allegations, and be relevant to the questions in dispute."

This rule excludes evidence not relevant to the matters in issue.

We have examined all the assignments of error, and find that the rulings upon the evidence were correct, under the, issues made by the pleadings. We find, also, that there was no error in the instructions given by the court, and that they covered all the issues properly. We find, also, that the trial court did not err in refusing to give the charges requested by the plaintiff.

7. When the instructions of the trial court cover properly all of the issues in the case, it is not error to refuse to give charges requested by counsel, although they state the law applying to the case correctly.

We find no error in the record, and the judgment of the court below is affirmed.          AFFIRMED.