Argued July 11, affirmed October 8, 1918.

# PEERLESS PACIFIC CO. *v.* MANNING.

### (175 Pac. 429.)

**Mechanics' Liens—Contractor—Evidence.**

1. In a suit by a company to foreclose a lien for plumbing fixtures, etc., evidence *held* to show that the company, and not a party defendant who had done the plumbing work, etc., was the contractor.

**Mechanics' Liens—Material—Agency—Payment.**

2. A company contracting to furnish material might, if it wished, make the one performing the labor thereon its agent to receive payment, and could not complain that the owner made payments to such agent in reliance upon an express instruction from it.

**Mechanics' Liens—Contractor—Evidence—Pleading.**

3. In suit to foreclose lien for materials sold to a codefendant, designated as contractor and owner's agent, on his request, the owner's evidence that plaintiff, and not his codefendant, was the contractor, was admissible under an answer denying that codefendant was a contractor or agent, or that material was furnished at his request.

[As to liens of materialmen, see note in 79 Am. Dec. 268.]

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 2.

This is a suit to foreclose a lien for materials which were used in a dwelling-house built for J. P. Tamiesie, the owner. The Peerless Pacific Company, a corporation, is a wholesaler dealing in heating plants and plumbing supplies and it furnished the heating plant and plumbing fixtures which were installed in the Tamiesie residence. The plaintiff filed a lien within the time required by law and subsequently began this suit to foreclose it.

The complaint avers that at the request of Guy C. Manning the contractor, and hence the agent of Tamiesie, the plaintiff sold to Manning materials, reasonably worth $1,659.97, which were installed in the

Tamiesie residence; that $1,514.91 has been paid; and that a balance of $145.06 is due and unpaid.

The answer of Tamiesie denies that Manning was his contractor or agent or that any of the materials were furnished at the request of Manning; and this pleading affirmatively alleges that the plaintiff was paid in full for all materials used in the house. A trial resulted in a decree for Tamiesie and the plaintiff appealed.                                                    AFFIRMED.

For appellant there was a brief over the name of *Messrs. Lewis & Finnigan,* with an oral argument by *Mr. A. T. Lewis.* ꞌ

For respondents there was a brief and an oral argument by *Mr. William A. Williams.*

HARRIS, J.—1. At the oral argument counsel for plaintiff stated that only two questions were presented by the appeal: (1) whether Manning was the contractor; and (2) whether the answer filed by Tamiesie was sufficient to admit the evidence relied upon by him. The record will therefore be examined for the purpose of deciding those two questions. The plaintiff claims that Manning was the contractor for both the materials and the labor while the defendant Tamiesie contends that the plaintiff was the real contractor for the materials. It is conceded that R. H. Griffith, a salesman for the plaintiff, solicited Tamiesie to purchase the materials for the house. Manning was not known to Tamiesie until after Griffith had quoted prices to Tamiesie for most of the materials needed for the building. After Manning was introduced to Tamiesie the former made an additional list of needed materials, and Griffith quoted prices on the additional list. Afterward, on February 9, 1915, a written con-

tract was entered into fixing $1,014 as the price to be paid for the labor and materials for the installation of the plumbing, and $950 as the sum to be paid for the labor and materials used in the installation of a heating plant. Manning claims that before signing the writing it was understood with the plaintiff that the latter would furnish the plumbing supplies for $864 and the heating plant for $676 or a total of $1,540, leaving $150 to Manning for his labor on the plumbing and $274 for his labor on the heating plant, or a total of $424. Under date of March 1, 1915, the plaintiff, by Griffith, signed a paper confirming ''prices given you as follows for the Dr. Tamiesie job as per list submitted * * Heating $676 net * * Plumbing $864 net.'' It will therefore be assumed that the price agreed to be paid by Tamiesie for the labor and materials was $1,964 of which amount $1,540 was to be paid for the materials instead of $1,659.97 the amount which the plaintiff alleges is the reasonable value. Extras amounting to $12.80 were used so that the total sum chargeable against Tamiesie is $1,976.80.

Tamiesie asserts that the plaintiff was the real contractor for the materials and that Manning was a mere figurehead for the company. It is said that the plaintiff was a member of an association of wholesalers who had some sort of an agreement obligating the members not to sell to anyone except plumbers; and Tamiesie asserts that the plaintiff explained to him that Manning would be used as a mere conduit for the purpose of evading the association agreement. A detailed discussion of the contradictory evidence would not serve any useful purpose, and we therefore content ourselves with the statement that the record has been twice read with care and that our conclusion is that Manning was not in truth the contractor for the mate-

rial. In its brief the plaintiff makes much of the fact that an interlineation was written into the contract by Griffith. The company claims that this interlineation proves that Manning was the real contractor for the material. The plaintiff was itself, however, vitally interested in the interlineation. Manning had filed a petition in bankruptcy on the preceding day and he was indebted to the plaintiff on an open account and the subject matter of the interlineation tended to insure payment to the plaintiff for materials delivered in the name of Manning for the Tamiesie residence.

2. Tamiesie testified that the plaintiff, through its representative, told him he could pay Manning or the plaintiff. This testimony was not denied although there was ample opportunity for denial. Tamiesie acted upon that instruction by making four checks to Manning and one to the plaintiff. The five checks aggregated $1,976.80 or the full amount of the agreed price of the labor and materials plus the extras. The final check was for $976.80 and was made payable to the plaintiff. The other four checks were made payable to Manning who cashed them and paid the money to the plaintiff, except however about $534 which he retained. The amount kept by Manning exceeded the sum which he was to receive for his labor by $110. At all events, the plaintiff had a right, if it wished, to make Manning its agent to receive payment and it cannot now complain if Tamiesie made payments to Manning in reliance upon an express instruction from it.

3. Evidence offered by Tamiesie upon the question of who was the contractor tended directly to negative the allegation that Manning was the contractor and tended to establish a circumstance or fact which was inconsistent with the allegations in the complaint.

We think the instant case conforms with the rule applied in *Horn* v. *Davis*, 70 Or. 498 (142 Pac. 544). The decree appealed from is affirmed.      AFFIRMED.

McBRIDE, C. J., BEAN and JOHNS, JJ., concur.