Argued November 19, 1918, reversed January 21, 1919.

## WISDOM *v̄.* ARNOLD.

(177 Pac. 958).

**Pleading—General Issue—Matters Provable.**

1. Under the general issue, evidence may be given of anything that would simply disprove the allegation controverted.

**Logs and Logging—General Denial—Matters Provable.**

2. In an action to foreclose a lien on logs for services, defendant could not, under a general denial, show that plaintiff had become a member in a partnership which previously had agreed to save defendant harmless from labor liens; a general denial giving plaintiff no notice of such a defense.

**Logs and Logging—Foreclosure of Liens—Evidence—Sufficiency.**

3. In an action to foreclose a lien on logs for services, evidence *held* not to sustain a finding that plaintiff had become a member in a partnership which had agreed to save defendant harmless from labor liens.

   [By whom and for what labor or services logger's lien may be claimed, see note in **Ann. Cas.** 1916C, 198.]

From Douglas: JAMES W. HAMILTON, Judge.

Department 1.

At the times mentioned in the complaint, William Arnold and James Beasley, the defendants, were part-

ners and owners of a sawmill. J. M. Wisdom, the plaintiff, claims that he performed work and labor in getting out sawlogs and delivering them at that sawmill to be manufactured into lumber. He says he was employed by a firm of Tuttle & Wisdom, composed of C. H. Tuttle and Charles Wisdom, acting as agents for Arnold & Beasley in the matter of getting out the logs. He says in his complaint he performed the labor and services between April 12, 1916, and July 17th of the same year, for a period of 68 days, at the agreed and contract price of $3.50 per day, amounting in all to the sum of $238, which has not been paid in whole or in part. He alleges that on July 31, 1916, he filed in the office of the county clerk of Douglas County, wherein the labor was performed, a notice of lien upon the logs, which appears to be substantially in the form prescribed by the statute. He asserts he paid 80 cents for filing and recording the same, and that $50 is a reasonable attorneys' fee for instituting and prosecuting this suit for the foreclosure of the lien.

Arnold & Beasley alone answer, only denying each and every allegation of plaintiff's complaint. They allege no new matter whatever. The Circuit Court made findings of fact and conclusions at law dismissing the suit, and plaintiff appeals.        Reversed.

For appellant there was a brief over the names of *Mr. John T. Long* and *Mr. George Jones,* with an oral argument by *Mr. Long.*

For respondents there was a brief and an oral argument by *Mr. Albert Abraham.*

BURNETT, J.—For convenience the plaintiff will be called Joe Wisdom, and his brother, member of the

firm of Tuttle & Wisdom, will be referred to as Charles
Wisdom.

At the hearing, without objection, there was received
in evidence a certain agreement between Arnold &
Beasley, party of the first part, and Tuttle & Wisdom,
a partnership consisting of C. H. Tuttle and Charles
Wisdom, party of the second part, providing in sub-
stance that Tuttle & Wisdom should get out the logs in
question and deliver them at the mill of the defendants,
Arnold & Beasley. One of the provisions of the con-
tract was that the party of the first part, Arnold &
Beasley, should not be in any manner liable for any
labor liens.

The plaintiff gave evidence in support of his claim
showing the amount of labor he had performed, the
agreed daily compensation therefor; that the same had
not been paid, and that he had given due notice of his
lien in the manner prescribed by statute. Under the
general issue over the objection of the plaintiff to the
effect that the same was incompetent, irrelevant and
immaterial and not admissible under the pleadings, the
defendant firm endeavored to prove that Joe Wisdom
succeeded to the interest of Tuttle in the firm of Tut-
tle & Wisdom, and undertook as a new partner in that
firm to perform the written contract already men-
tioned. In allowing this proceeding we are of the
opinion the Circuit Court was in error.

1, 2. The object of the pleading is to give notice to
the opposite party of the pleader's cause of action or
ground of defense. It is true under the general issue,
evidence may be given of anything that would simply
disprove the allegation controverted. For instance, in
the present case it would have been permissible to show
that during the whole time mentioned in the complaint
the plaintiff was sick in a hospital and unable to do

any work of the kind mentioned. But the attitude assumed by the defendants in the evidence is vastly different from such a situation. In effect they are saying:

"We confess you did the work you mentioned, but we had a contract with Tuttle & Wisdom saving us harmless from all liens, and you contracted with them to assume their obligations in that respect, and hence you cannot claim a lien against us because you have agreed to save us harmless in that respect."

The mere denials of plaintiff's complaint give him no notice whatsoever that the defendants would undertake to prove such a case, or attempt to show that he had assumed the obligation of another. It is not necessary at this juncture to cite further authorities than *Horn* v. *Davis,* 70 Or. 498 (142 Pac. 544), where the subject of what may be proven under the general issue is ably discussed by Mr. Justice RAMSEY.

Passing all this, however, we come to an analysis of the evidence on the subject. The testimony of the defendant Beasley is to the effect that after Tuttle had done but little work on the contract he left the neighborhood and was not thereafter known in the transaction, and that Charles Wisdom came to the witness and stated "he wanted a contract drawn up with him and Joe Wisdom, the same as the one they had, and said they would go ahead with the logging as partners." The witness stated that no contract was drawn up but that he agreed to the arrangement verbally. On cross-examination, however, he said there were present when this agreement was made only himself, Charles Wisdom, and the defendant Arnold; that they had no other agreement than the one with Charles Wisdom, and that they never had any understanding with Joe Wisdom about it. Further it appears in evidence that after that time all the orders that came to the defendant firm

for payments to the laborers, were signed by Charles Wisdom alone and honored as such. The testimony of the defendant Arnold is substantially the same as that of Beasley.

Jesse Williams, another witness for the defendants, testified that Joe Wisdom was running the donkey-engine used in the logging operations; that the witness himself was firing, and that on one occasion in a conversation with Joe Wisdom concerning his services, to use his own language:

"We talked about wages, something, but I don't remember just now. There was something said about wages, and I * * He said after they got these logs in that we were hauling then, that they were figuring on paying their fireman $3 a day, and if I thought I could stand the job, I could get that wages."

Witness further testified in answer to questions, as follows:

"Q. Now, he used the plural pronoun, 'we'?

"A. Well, I don't remember whether he did or not. I could not say for sure, but he was talking to me and to the best of my knowledge I think that is what he said, that they were figuring on paying me $3 a day.

"Q. What was the understanding there as to who was doing the logging business, as to who was doing the business, who was doing the logging?

"A. I supposed the Wisdom boys, I don't know. * *

"Q. What part did he [Joseph Wisdom] take in regard to running the business there, controlling the business?

"A. Well, I don't hardly know. He seemed to be running the donkey as far as I know, and helped in the woods.

"Q. Do you know of your own knowledge what their arrangement was as to being partners?

"A. No, sir.

"Q. Never heard that discussed between them?

"A. No, sir."

The witness further testified that the orders he had on the defendant firm for wages were signed by Charles Wisdom, and that he never heard the Wisdom boys say anything about a partnership.

Before the trial the defendants made an application for a continuance on account of the inability of the wife of defendant Beasley, and her mother, to attend as witnesses by reason of their sickness. In the affidavit it was stated that the two witnesses talked with Joe Wisdom in July, 1916, in which conversation he

"said to said Eva Beasley that the plaintiff and the said defendant, Charles Wisdom, were partners in the logging business described in plaintiff's complaint, as being the logging business of Charles Wisdom and C. H. Tuttle."

To avoid a continuance the plaintiff admitted

"that Eva Beasley and Marcella Bodwell will, if permitted to testify to the statements made in defendant's affidavit for continuance, testify as stated; but plaintiff does not admit the competency, materiality or truthfulness of said statements."

This led to a denial of the motion for postponement of the trial, and at the hearing the affidavit for a continuance was read in evidence. The defendant, Charles Wisdom, testified denying expressly that he made to either Arnold or Beasley any such statement as they imputed to him. He said he had no authority from Joe Wisdom to make such a statement, and that the matter of partnership between him and his brother had never been broached. Joe Wisdom testified in a similar strain, saying he never at any time entered into a partnership with Charles Wisdom and never authorized his brother to make such a declaration to Arnold & Beasley.

3. Considering the admission of both Arnold & Beasley that they never had any conversation or ar-

rangement with the plaintiff Joe Wisdom; that the testimony imputed to the absent witnesses related to a supposed oral admission of a party, which our statute says must be viewed with caution; that those witnesses were not subjected to cross-examination; that both the Wisdoms flatly denied any such arrangement; that the testimony of Williams shows he knew nothing about the matter, and above all, that under the general issue, the admission of testimony seeking to charge the plaintiff as a partner was not admissible, the weight of the testimony is in favor of the plaintiff.

The result is the decree of the Circuit Court is reversed, and one here entered foreclosing plaintiff's lien upon the logs and lumber mentioned for the sum of $238 principal, 80 cents recording fee, $50 reasonable attorneys' fee, and for the costs and disbursements of the suit. Whether the Circuit Court had jurisdiction of the firm of Tuttle & Wisdom does not appear from the abstract, hence on the record before us we can go no further than to decree a foreclosure of the lien against the logs and lumber, without personal judgment except for costs and disbursements against Beasley and the estate of Arnold, who the stipulation before us shows is dead, and his administrator substituted.                    REVERSED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.