Argued September 11, reversed and remanded December 31, 1957

# STATE HIGHWAY COMMISSION *v.* BAILEY ET AL

319 P. 2d 906

*Frederick A. Morgan, Jr.,* Assistant Attorney General for Oregon, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General for Oregon, C. W. Enfield, Assistant Attorney General and Chief Counsel for Oregon State Highway Commission, and Leonard I. Lindas, Assistant Attorney General for Oregon.

*J. B. Bedingfield,* of Coos Bay, argued the cause for respondents. With him on the brief were J. B. Bedingfield, Jr., and Bedingfield, Grant & Bedingfield, of Coos Bay.

Before Perry, Chief Justice, and Rossman, Brand and McAllister, Justices.

BRAND, J.

This is an action brought by the State of Oregon by its Highway Commission against Kate L. Bailey, Leslie Zumwalt and Mary Eleanor Zumwalt, husband and wife, and Bernard I. Mather and Alice A. Mather, husband and wife, to condemn land required for a limited access highway. Judgment was entered on a verdict for defendants for $22,000.00 plus interest, and plaintiff appeals. The plaintiff Highway Commission assigns as error the order of the trial court in allowing defendants' motion to strike plaintiff's further and separate reply which alleges purported special benefits to be set off against the damages arising from the condemnation and which order also excluded any evidence in support of those allegations. The contention of defendant is that that reply alleges only general and not special benefits to defendants and that general benefits cannot be set off against damages. The bill of exceptions is sufficient to raise this issue, but it does not bring up the evidence. Our question is whether evidence which would support the reply would have been admissible.

The sufficiency of the complaint is not challenged. It describes the boundaries of the defendants' lands and of the proposed throughway which bisects said lands, and it defines the location and extent of rights of access and passage accorded to the defendants. The answer sets up the claims of damage by reason of the limited access character of the taking, the loss of use of certain portions of an old county road, the resulting necessity to build fences and barns, and the inconvenience caused by the taking. The value of the land taken is alleged to be $17,000 and the reduction in value of the remaining lands not taken is set at $10,000.

The separate reply which was stricken by the court reads, in part, as follows:

## "I.

"That prior to the institution of this proceeding, defendants property was located in excess of 3 miles from a paved, all weather highway. That the only access and facilities of ingress and egress to and from said property was by means of a narrow, crooked, inadequate and poorly improved county road.

## "II.

"That said county road, in a northerly direction from defendants property was and now is without base or foundation capable of sustaining any vehicular traffic during the rainy season of the year, and was and now is incapable of sustaining, during any season of the year, heavy vehicular traffic.

## "III.

"That a portion of the said county road, located near the southerly boundary of the defendants property, is completely impassable for vehicular traffic of any kind, and has been so impassable for a period in excess of one year.

## "IV.

"That there is now being constructed upon the property sought by this proceeding the relocated Oregon Coast Highway, a major highway of this State and Nation. That said highway, after construction, will be maintained by the Oregon State Highway Department. That said highway is being constructed in accordance with the best and most modern engineering and safety standards, and will be an all weather, public highway, with an asphaltic concrete paved surface of a width of 24 feet, and of a thickness of not less than 3½ inches, and on a substantially straight alignment.

## "V.

"That access to the said relocated Oregon Coast Highway will be granted to the defendants as provided for in Paragraph V of the plaintiff's amended complaint on file herein.

## "VI.

"That the highest and best use of all of the defendants real property, lying easterly of the property described in Paragraph IV of the plaintiff's amended complaint on file herein, prior to the institution of this proceeding, was for agricultural purposes.

## "VII.

"That after the construction of the said relocated Oregon Coast Highway, as aforesaid, and as a direct result of the construction of said highway, portions of the defendants remaining property, hereinafter designated as Parcels 'A', 'B', 'C' and 'D' will be particularly and specially benefited in the following particulars, to-wit:

"(1) Parcels 'A', 'B', 'C' and 'D' of the defendants remaining property will then be accessible to an all weather, modern, year around, regularly maintained, all vehicular public highway, a part of the public highway system of the State of Oregon, with improved facilities for ingress and egress to and from said Parcels 'A', 'B', 'C' and 'D' and said highway.

"(2) Parcels 'A', 'B', and 'D' of the defendants remaining property will then be adaptable, suitable and available for a higher and better use, viz: for residential and subdivision purposes.

"(3) Parcel 'C' of the defendants remaining property will then be adaptable, suitable and available for higher and better use, viz: for the establishment of commercial ventures and those that cater to the travelling public.

## "VIII.

"Parcel 'A' is a tract of land, nearly rectangular in shape, 'abutting upon and lying easterly of the

east right of way line of the relocated Oregon Coast Highway between Highway Engineer's stations 1287+50 and 1293+70, containing approximately 3.75 acres. That after the construction of the said relocated Oregon Coast Highway as aforesaid, and as a direct result of the construction of said highway, said parcel 'A' will be particularly and specially benefited as alleged in paragraph VII of plaintiff's further and separate reply above, and the market value of said parcel 'A' of the defendants remaining property as a result of said particular and special benefits will be increased in the sum of $1,125.00.

### "IX.

"Parcel 'B' is a tract of land, irregular in shape, abutting upon and lying easterly of the right of way line of the relocated Oregon Coast Highway between highway Engineer's station 1255+00 and 1264+65, containing approximately five acres. That after the construction of the said relocated Oregon Coast Highway as aforesaid, and as a direct result of the construction of said highway, said parcel 'B' will be particularly and specially benefited as alleged in Paragraph VII of plaintiff's further and separate reply above, and the market value of said parcel 'B' of the defendants remaining property as a result of said particular and special benefits will be increased in the sum of $1,250.00.

### "X.

"Parcel 'C' is a tract of land, nearly rectangular in shape, abutting upon and lying easterly of the east right of way line of the relocated Oregon Coast Highway between Highway Engineer's station 1233+00 and 1240+00, containing approximately four acres. That after the construction of the said relocated Oregon Coast Highway as aforesaid, and as a direct result of the construction of said highway, said parcel 'C' will be particularly and specially benefited as alleged in Paragraph VII of plaintiff's further and separate reply above, and

the market value of said parcel 'C' of the defendants remaining property as a result of said particular and special benefits will be increased in the sum of $1,200.00.

## "XI.

"Parcel 'D' is a tract of land, nearly rectangular in shape, abutting upon and lying easterly of the east right of way line of the relocated Oregon Coast Highway between Highway Engineers station 1224+66 and 1231+25, containing approximately ten acres. That after the construction of the said relocated Oregon Coast Highway as aforesaid, and as a direct result of the construction of said highway, said parcel 'D' will be particularly and specially benefited as alleged in Paragraph VII of plaintiff's further and separate reply above, and the market value of said parcel 'D' of the defendants remaining property as a result of said particular and special benefits will be increased in the sum of $1,000.00."

The prayer of the reply is that the special benefits to the remaining lands be determined by the jury.

It will be recalled that paragraph "V" of the reply incorporated paragraph "V" of the amended complaint with regard to the rights of access. The allegations of paragraph "V" of the amended complaint are substantially as follows:

"* * * there shall be reserved unto the defendants, their heirs and assigns, for service of the said remaining land, the following:

"A right of access to the said relocated Oregon Coast Highway of a width not to exceed 25 feet on the East side of the said relocated highway, opposite Highway Engineer's center line Station 1231+25, only so long as no use is made thereof other than for the production and transportation to market of farm products of the defendants' remaining land, for the development, harvesting and

transportation to market of forest products of the defendants' remaining land, and for private residential purposes.

"A right of access to the said relocated Oregon Coast Highway of a width not to exceed 25 feet on the West side of the said relocated highway, opposite Highway Engineer's center line Station 1271+00, only so long as no use is made thereof other than for the production and transportation to market of farm products of the defendants' remaining land, for the development, harvesting and transportation to market of forest products of the defendants' remaining land, and for private residential purposes.

"A right of access to the said relocated Oregon Coast Highway of a width not to exceed 25 feet on the East side of the said relocated highway, opposite Highway Engineer's center line Station 1264+75, only so long as no use is made thereof other than for the production and transportation to market of farm products of the defendants' remaining land, for the development, harvesting and transportation to market of forest products of the defendants' remaining land, and for private residential purposes. [NOTE: Station 1264+75 was changed by stipulation to read Station 1267+35]

"A right of access to the said relocated Oregon Coast Highway of a width not to exceed 25 feet on the East side of the said relocated highway, opposite Highway Engineer's center line Station 1287+50, only so long as no use is made thereof other than for the production and transportation to market of farm products of the defendants' remaining land, for the development, harvesting and transportion to market of forest products of the defendants' remaining land, and for private residential purposes.

"The plaintiff shall, however, have the right at its option to build at any future time, at its sole cost, a frontage road or roads within the boundaries of any present or hereafter acquired right of way;

thereupon, the rights of access hereinabove reserved to and from the aforesaid highway which are on or adjacent to any such frontage road or roads shall cease, but the defendants, their heirs and assigns, shall have access to the said frontage road or roads. Said frontage road or roads shall be connected to the said relocated Oregon Coast Highway at a point not a greater distance to the North of the defendants' remaining land than a point approximately opposite Highway Engineer's center line Station 1208+00, and shall be connected, via an underpass, to a Curry County road, known as the Wedderburn-Giesel Monument County Road, at a point not a greater distance to the South of the defendants' remaining land than a point 100 feet Westerly of Highway Engineer's center line Station 1338+00.

"A right of access to the said relocated Oregon Coast Highway via Wedderburn-Giesel Monument Curry County Road, which said Curry County Road will connect with the said relocated Oregon Coast Highway, opposite Highway Engineer's center line Station 1240+00 & 1240+99.

"A right of passage across the relocated Oregon Coast Highway through a corrugated metal tube, 84 inches in diameter, which the plaintiff will place, at its sole cost, under the highway to be constructed at Highway Engineer's center line Station 1277+75. Said right of crossing shall continue only so long as any portions of the property severed by the said highway and served by the said underpass are held under a common ownership.

"The right, so long as any portions of the property severed by the said Oregon Coast Highway and served by such crossing are held by a common ownership, to establish, maintain and use a crossing of a width of 25 feet at Highway Engineer's center line Station 1287+50 on the easterly side of the said Oregon Coast Highway and of a width of 25 feet at Highway Engineer's center line Station 1288+50 on the westerly side of the said Oregon

Coast Highway, such right to continue only so long as the crossing shall be used for farm purposes only.

"The construction of a frontage road shall not defeat the rights of crossing herein granted."

The amended complaint also provides:

## "VIII.

"That as a part of the construction program the plaintiff, at its sole cost, will construct fences on both sides of the right of way of the said relocated Oregon Coast Highway where the same abuts the defendants' remaining real property, and will maintain the same so long as the real property described hereinabove is used for right of way purposes.

## "IX.

"Plaintiff, at its sole cost, will construct a 6-inch conduit beneath the highway to be constructed at Engineer's center line Station 1289+00, through which defendants, their heirs and assigns, shall have the right to place a 1½-inch pipe for the purpose of transporting water for domestic and stock purposes. Defendants, their heirs and assigns, shall have the right to go upon the right of way for the purpose of maintaining the same."

Perhaps we should amplify our statement as to the defendants' motion to strike the separate reply.

The bill of exceptions certifies that the motion was made in chambers after the jury had been selected and sworn and before the opening statements. Counsel said:

"I move that the second further and separate amended reply be stricken on the ground that it shows affirmatively on the face of the pleading that all of the alleged special benefits are, in fact, general, and I also move that all testimony in proof of the facts alleged by which they claim their special benefits be excluded from the record, * * *."

Counsel then said:

"* * * I am limiting my motion to the specific allegations of special benefits in the amended reply, the specific points that they allege out of which they claim that the special benefits arise."

The court said, "The motions will be allowed." It was agreed that the court's rulings should be considered as though they were made at the proper time during the trial.

We are of opinion that the issue as to the admissibility of evidence which would support the allegations of the reply is before us for decision. Attention is called to the allowance by the court of the second motion to exclude all testimony in proof of facts alleged concerning special benefits.

■ In their brief defendants assert and we agree that

"in the absence of statute requiring special benefits to be specially pleaded, proof thereof is admissible on the issue of amount of damages and compensation payable to the owners of the appropriated land and damages to land not taken, without specially pleading special benefits claimed."

Our agreement, however, is limited to the statement that special benefits need not be pleaded and are admissible on the issue of damages to the land not taken. In support defendants cite *Oregon Central R. R. Co. v. Wait,* 3 Or 91, and *Willamet Falls C. & L. Co. v. Kelly,* 3 Or 99, both of which were circuit court cases, and *Oregon Central R. R. Co. v. Wait,* 3 Or 428, decided in the Supreme Court. In all three cases the damages to the land not taken were alleged in the answer, and issue was joined by general denial only, yet the court considered the question of special benefits to be de-

ducted from damages. So too in *Beekman v. Jackson County*, 18 Or 283, cited by defendants, it was implied that special benefits, if proven, should be considered, and no reference was made to any duty of the part of the condemnor to plead them. See also, *Horn v. Davis*, 70 Or 498, 142 P 544. Defendants also cite *Schmid v. City of Portland*, 83 Or 583, 591, 163 P 1159, for the proposition stated in their brief supra. We agree that the Schmid decision is consistent with the asserted rule. The court said:

"* * * When the general statutes are resorted to for the condemnation of land for a public use the owner is entitled to allege and prove not only the value of the realty taken but also the damage to the remainder of the tract; and, ordinarily the appropriator may in turn offset the damages by showing that the remaining land is specially benefited, but the burden of showing special benefits is on the party seeking to condemn: * * *." *Schmid v. City of Portland*, 83 Or 583, 591.

■ The court did not say that the burden of proof of special benefits was on the condemnor or that any duty to plead them was imposed upon it. The proper construction of the words quoted is that a defendant in a condemnation action must allege the value of the land taken and the damage (reduction in market value) to the remainder of the tract, and if the Highway Commission would show special benefits to reduce the amount of such damage it must go forward with the evidence, but the burden of proof of the amount of damage to the remainder of the tract is upon the defendants. *Highway Commission v. Superbilt Mfg. Co.*, 204 Or 393, 405, 281 P2d 707; 2 Lewis, Eminent Domain, 3d ed, § 645, p 1114; 4 Nichols on Eminent Do-

main, § 14.21[2], p 316. We also take note of the provision that

> "The defendant in his answer may set forth any legal defense he may have to the appropriation of the lands, or any portion thereof. He may also allege the true value of the real property and the damage resulting from the appropriation thereof." ORS 366.380(3).

No reference is made in this section to any reply setting forth special benefits. We hold that it is unnecessary to plead them.

The rule as stated by the defendants to the effect that it was unnecessary for the plaintiff to allege special benefits in its reply, and the implication drawn therefrom that the reply was properly stricken does not, however, dispose of this case, for the court also held that evidence supporting the allegations of the reply, if offered, would be rejected. Under this ruling it is apparent that such evidence of special benefits as would have been admissible in support of the reply would have been excluded at the trial regardless of the presence or absence of any pleading alleging such special benefits.

We think it clear that the stipulation of the parties amounted to a waiver of any requirement that the plaintiff should make offers of proof of special benefits. The reply sufficiently indicates the desire of the plaintiff to present evidence of special benefits, and the order of the court, considered with the stipulation, sufficiently indicated that any offers of such evidence would be rejected. Both parties have presented the case on the theory that the issue for determination here is whether evidence of the benefits described in the reply was admissible as special benefits or whether they were only general in nature.

The basis of defendants' claim for compensation is the constitutional provision that "Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered; * * *." Constitution of Oregon, Article I, § 18; *Harland v. Chandler*, 208 Or 167, 175, 300 P2d 412. The statutory authority for taking and establishing state highways is found in ORS, chapters 366 and 374. Special reference is made to the following sections of ORS 366: 205, 220, 320(2), 340, 375(1), 380, and the provisions concerning the establishment of throughways or limited access highways to be found in ORS, chapter 374, §§ 005, 010, 030, 035, 055, 085 and 090. In the case at bar the proceeding is for the acquisition of a "throughway", which is defined as follows:

"As used in ORS 374.005 to 374.095, 'throughway' means a highway or street especially designed for through traffic, over, from or to which owners or occupants of abutting land or other persons have no easement of access or only a limited easement of access, light, air or view, by reason of the fact that their property abuts upon the throughway or for any other reason." ORS 374.010.

Under the express provisions of ORS 374.035(2) the resolution adopted in the case at bar constitutes conclusive evidence that the highway when constructed shall be a throughway "with all of the characteristics and incidents prescribed by and provided for in ORS 374.005 to 374.095." The provisions of ORS 374.055 are of special importance in the consideration of this case. We quote:

"In any proceeding in eminent domain evidence of the entire plan of improvement is admissible for the purpose of determining:

"(1) Value of property taken.

"(2) All damages by reason of deprivation of right of access to any highway to be constructed, established or maintained as a throughway.

"(3) The damages which, if the property sought to be condemned constitutes a part of a larger parcel, will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and by reason of the construction of the improvement in the manner proposed." ORS 374.055.

■ The Highway Commission takes a fee simple title to the land condemned. ORS 366.360; *State Highway Com. v. Burk,* 200 Or 211, 227, 295 P2d 783; *State Highway Commission v. Efem Warehouse Co.,* 207 Or 237, 265 P2d 1101.

■■ Postponing the attempt to define special benefits and to distinguish them from general benefits, the question first arises as to the legal effect to be given to special benefits in the trial of a condemnation action. It is now firmly established by our decisions that such benefits may be set off or employed to reduce the damages to the remainder of the tract not taken, but cannot be used to adversely affect the right of the owner to receive the fair cash market value of the land actually taken. The defendants were entitled to receive the fair cash market value of the land actually taken for highway use. Such value includes the land itself and any improvements which are a part of the realty. *Oregon & Cal. R. R. Co. v. Barlow,* 3 Or 311, 315 (circuit court) ; *Oregon Central R. R. Co. v. Wait,* 3 Or 428, 433 ; *Harrison v. Pacific Ry. & Nav. Co.,* 72 Or 553, 559, 144 P 91; *Portland-Oregon City Ry. Co. v. Penney,* 81 Or 85, 158 P 404; *Portland & O. C. Ry. Co. v. Sanders,* 86 Or 62, 73, 74, 167 P 564; *Keane v. City of Portland,* 115 Or 1, 12, 235 P 677 ; *State ex rel. Kendall v. Mohler,* 115 Or 562, 578, 237 P 690, 239 P 193; *Pape v. Linn*

*County,* 135 Or 430, 437, 296 P 65; *State of Oregon v.
Cerruti,* 188 Or 103, 113, 214 P2d 346; *State Highway
Commission v. Burk,* 200 Or 211, 248, 265 P2d 783;
*Highway Commission v. Superbilt Mfg. Co.,* 204 Or 393,
412, 281 P2d 107; *Highway Commission v. Holt,* 209 Or
697, 308 P2d 181.

7. This court in *Re Petition of Reeder,* 110 Or 484,
493, 222 P 724, stands in opposition to the cases cited
supra. In that case the court quoted from 1 Elliott,
Roads and Streets, 4th ed., § 275, as follows:

> "The authorities upon the general subject of the
> allowance of benefits range themselves under these
> heads:
> "1. Those holding that benefits can not in any
> case be set off against the injury sustained by the
> landowner.
> "2. Those holding that special benefits may not
> be set off against the value of the land actually
> seized, but may be set off against injury to the
> residue of the tract or incidental injuries sustained
> by the landowner.
> "3. Those holding that special benefits may be
> set off against the value of the land as well as
> against incidental injuries."

The court then said: "Oregon is properly classed with
the third division." That statement is contrary to the
rule laid down in the cases cited, and is not the law.
The Oregon rule now falls within the class numbered
"2" as defined by Elliott. *Willamet Falls C. & L. Co. v.
Kelly,* 3 Or 99 (Circuit Court); *Oregon Central R. R.
Co. v. Wait,* 3 Or 428, 432, 433; *Harrison v. Pacific Ry.
& Nav. Co.,* 72 Or 553, 559, 144 P 91; *Pape v. Linn
County,* 135 Or 430, 437, 296 P 65; *State Highway
Commission v. Burk,* all supra.

In dealing with the landowners' right of compensa-
tion with reference to the residue or portion of the

tract not actually taken, we must deal with the problem of "damages" and benefits, and the meaning of "benefits" must be considered in connection with the meaning of "damages." What then is meant by "damages" resulting from the appropriation, as that word is used in the decisions and statutes?

In his great modern work on Eminent Domain, 3d ed, vol 4, Nichols classifies the rules from the various jurisdictions into three groups, and illustrates the rule in each group by an equation. These equations are:

Group 1. "Value of land taken plus (value of remainder area before taking minus value of remainder after taking) equals Just compensation." § 14.23, p 321.

Group 2. "Value of entire parcel before taking minus value of remainder area after taking equals Just compensation." § 14.23, p 326.

Group 3. "Value of land taken plus (damages to remainder area minus benefits to remainder area) equals Just compensation." § 14.23, p 327.

The embarrassing fact is that the author cites an Oregon case in support of each of the three rules. Under Group "1" he cites *La Grande v. Rumelhart,* 118 Or 166, 246 P 707; under Group "2", *Putnam v. Douglas County,* 6 Or 328, and *Portland-Oregon City Ry. Co. v. Penney,* supra, 81 Or 81, 158 P 404; and under Group "3", *Beekman v. Jackson County,* supra, 18 Or 283. If this court has in fact announced three different rules governing compensation, it is time for a clarification. However, we think the discrepancies are more apparent than real.

The implication of the cases in Group "2" is that if the land not taken is increased in value in an amount equal to the value of the land taken, the owner would be entitled to no compensation whatever. *Putnam v. Douglas County,* supra, classified as falling within Group "2", was decided in 1877. The court in substance instructed the jury that if they found that the premises would not be rendered less valuable "by the opening of the road" the landowner should not receive any compensation even for the part actually taken. The jury were also told to take into consideration "all special advantages the opening of the road will give to the premises, which appear, if any; as, for instance the giving of an outlet to market to said premises and the enhancement of the value of the land taken." Pursuant to the instructions the jury found for the county and awarded the landowner nothing. The Supreme Court affirmed the judgment. In other words, the benefits were set off against the value of the land taken, as well as against the damages to the remainder. One judge dissented on this point. The case is contrary to the earlier ruling in *Oregon Central R. R. v. Wait,* supra, 3 Or 91 (circuit court) and the clear ruling in *Willamet Falls Canal & Lock Co. v. Kelly,* supra, 3 Or 99 (circuit court). It is also contrary to the more recent decisions cited supra which hold that the landowner is in any event entitled to receive the fair market value of the land taken. In so far as the Putnam case is contrary to these cases, it is overruled. *Portland-Oregon City Railway Co. v. Penney* (1916) was improperly classified under Group "2". We have already cited it as supporting the rule that the landowner must in any case receive the value of the land taken without deduction.

*Beekman v. Jackson County,* supra, classed by Nichols in Group "3" was tried below on the theory

announced in the Putnam case, and the jury awarded no compensation for land taken or damages to the remainder. On appeal judgment on the verdict was reversed for the reason, among others, that the instructions did not explicitly define special benefits. The opinion is not altogether clear, but it intimates that the owner is entitled to receive the value of the land taken plus damages to the remainder, subject to any reduction of such damages by reason of special benefits if any. If this was the meaning of the court, it was perhaps properly classified in Group "3". But in the light of our decisions and in this jurisdiction we hold that the formula for compensation in the cases like *Beekman v. Jackson County* and others in Group "3", when properly applied, is the same as the formula in Group "1". "Damages to remainder area minus benefits to remainder" means damages and benefits as reflected in market value, and therefore the final test is the value of remainder before taking, less value thereof after taking, that is to say, depreciation in market value of the remainder. When statutes refer to damages (ORS 366.380(3), 374.055) we have construed the law as above indicated. *State Highway Commission v. Burk; Portland-Oregon City Ry. v. Penney,* both supra; *Pape v. Linn County,* supra, 135 Or 430, 296 P 65; *People v. Al G. Smith Co., Limited,* 86 Colo App2d 308, 194 P2d 750.

An excellent instruction covering the rule as to the value of land taken, and the rule concerning the remainder, was given by the trial court and approved by this court in *Portland & O. C. Ry. Co. v. Sanders,* 86 Or 62, 167 P 564, as follows:

" 'In a case of this sort there are only two questions for you to determine. The first is the reasonable, market value of the strip of land taken, being

one tenth of an acre in this case, about that. The second is the amount of damages to the remaining land which is caused by the taking of this strip. * * * The measure of damages in this case to the defendants is the market value of the land taken, or sought to be taken by the railway company, the plaintiff, at the time of the filing this complaint. * * By the market value is merely meant the value which would be placed upon it by a person who wants to sell, but is not obliged to do so, and by another who wishes to purchase, but who is not obliged to do so. That constitutes the market value—such a value as would be arrived at by persons so situated. * * After having determined the reasonable market value of the strip of land, then you will consider whether or not the remaining land has suffered in damages, or has suffered rather in value, and the defendants consequently in damages by reason of taking the right of way. And in determining that question you are to be governed by the testimony that you have heard on both sides, and applying to that your own judgment as men of affairs, you will find the amount of such damage, if you find there was any, and you will also consider whether or not there would be a benefit to the land by reason of this railroad going through it, as claimed by the plaintiff. And after a consideration of those questions, if you should determine that the benefits offset the damages, that is, are as great as the damages, then you will not allow the defendants anything on account of that. If you should determine that the damages, however, are greater than the benefits, if you find there were benefits, then you should allow to the defendants such a sum as will reasonably compensate him for the difference between the benefits and the damages, if you find that the damages are greater than the benefits. Adding that sum to the reasonable value upon which you arrive as to the strip of land, the total amount would constitute your verdict in this case. * * *" "

*La Grande v. Rumelhart,* 118 Or 166, 176, 246 P 707, is cited by defendants. In that case we held that the following instruction given by the trial court "correctly states the law":

> "I further instruct you that in determining the damages, if any, to the remainder of defendants' land left after the taking of the roadway, you must consider all of the evidence in the case, and from it determine the reasonable market value of those portions of defendants' lands not taken, as it was on the 4th day of April, 1924, the time when the complaint in this action was filed, and from the same deduct the reasonable market value of said property after the severance and construction of the highway. This difference between those values, if there shall be any, will be the amount of damages done by the opening of said highway to the balance of the land not taken. The law fixes this method of determining the damages, and it is your duty to follow it."

█ We have held that it is unnecessary for the jury to make special findings as to the amounts of damages and benefits. *Beekman v. Jackson County,* supra. To require such separate findings would unduly complicate the task of a lay jury whose only duty is to determine (1) the value of the land taken, and (2) the depreciation in value of the residue. When the property owner introduces evidence of damage (depreciation in value to the residue) the plaintiff Commission may controvert such evidence and in addition may present evidence of special benefits. The duty imposed upon the trier of the facts is then simply to consider all of the relevant evidence and determine the amount if any of the depreciation of the market value of the residue not taken. The question as to special benefits is one of relevancy, not of pleading, and we now turn to a consideration of the scope and meaning of "special

benefits." In the ensuing discussion we are considering only damages and benefits to the residue not taken.

We will first consider the problem as it relates to the condemnation of a throughway or limited access highway. Under ORS 374.055(3) quoted supra, evidence was admissible to determine the damages which will accrue to the part not sought to be condemned by reason of its severance from the portion sought to be condemned and by reason of the construction of the improvement in the manner proposed. In *State Highway Commission v. Burk,* supra, we held that

"whether the market value of the land not taken was affected by the 'more complete severance' resulting from the character of the highway appropriated, was a question to be determined by the jury upon the evidence. \* \* \*" 200 Or 211 at 236.

Obviously, the completeness of the severance might affect the amount of the damage or depreciation in the land value. It is equally obvious that if the severance is not complete—if the owner is given access to the highway at specified points, or the right to go from his land on one side of the highway to the rest of his tract lying on the other side of the highway, then the depreciation, if any, resulting from the nonaccess aspect of the taking would be reduced. It is of little importance whether we say that the rights of access granted to the owner constitute special benefits or merely circumstances tending to minimize the depreciation in value which might otherwise result from the taking in the manner proposed.

In *State Highway Commission v. Burk,* supra, this court gave full consideration to the condemnation of limited access highways in relation to consequent depreciation in the land not taken, but had no occasion

to consider the question of special benefits. It is, however, significant that we said:

> "* * * The statute does not provide or imply that damages by reason of deprivation of right of access shall be fixed separately from other damages to the property not taken, but only that such evidence is relevant in the assessment of such damages. * * *" 200 Or 211 at 237.

Since the decision of the Burk case similar questions have been considered by the Supreme Courts of Missouri and Washington, and in both the question of special benefits has been discussed. In both cases the Burk case was cited with approval and quoted at length.

In *State v. Clevenger,* 365 Mo 970, 291 SW2d 57, a limited access case, the Supreme Court of Missouri said:

> "We approve the view expressed in the case of State, By and Through State Highway Commission v. Burk, 200 Or 211, 265 P. 2d 783; * * * But we further hold that evidence of the manner, nature and extent of the taking, the separation of defendants' land into different tracts, and the added inconvenience, if any, in going about the farm, may properly be considered by the jury in assessing the total net damages to the land, together with any other similar circumstances. And, certainly, evidence of the presence of the new roadway, the modes of access provided, the relocated county road, and the reasonably probable uses of the remaining property, may and should be considered in determining the question of special benefits, if any, to defendants."

The foregoing recent analysis of special benefits is of great significance, not only concerning the modes of access granted to the owner, but also concerning the other often disputed elements going to make up special benefits.

In *State v. Calkins,* Wash, 314 P2d 449 (1957), the court considered the right of compensation arising from the taking for a limited access highway. The highway bisected defendants' farm. The court followed the ruling in the Burk case. It then said:

"There is, however, the important subsidiary, or closely related question of severance damage to the remaining land after a limited-access highway is constructed because, although severance damages are not dependent upon the existence of rights of access or an easement regarding such rights, the limited-access nature of the highway may cause a more significant or complete severance than the conventional highway." Citing the Burk and Clevenger cases.

The court continued:

"The market value of the property remaining may be affected by the nature and the extent of the taking for the limited-access highway, the separation of a defendant's land into different tracts, and the added inconvenience, if any, in managing the property and in going from one tract to the other. Additional circumstances to be considered in assessing net compensation are: the presence of the new highway; the modes of access provided, if any; the presence of existing streets, roads and highways; and the reasonably probable uses of the remaining property in determining the question of special benefits, if any, to the defendants. But the severance damages must not be based upon any theory of a loss of access rights to the highway." Citing cases.

Concerning the offsetting of special benefits against "severance damages  *  *  *  based upon the added inconvenience of moving from one part of the land to the other, the separation of the land into different

tracts, and other management problems", the Washington court said:

> "* * * Offset against such compensation and severance damages are the special benefits, if any—such as modes of access provided, the presence of existing streets or roads, the presence of the new highway, and the reasonably probable uses of the remaining land. * * *"

The Missouri and Washington cases express the modern view concerning the nature of special benefits and their effect upon the depreciation of the value of the land not taken, with especial reference to limited access condemnations.

The complaint describes the nature, number and location of the rights of access granted to the defendants. The points of access and the property allegedly benefited are located along the proposed highway with reference to the Highway Engineer's Center Line Stations.

■ Four parcels of defendants' land described as parcels "A", "B", "C", and "D" are alleged to be specially benefited. Aided by the drawing, a map, the Engineer's survey stations and the pleadings, we have made a painstaking study of the location of the rights of access and of crossing with reference to the location of the parcels said to be specially benefited. Suffice it to say that some of the rights of access or crossing directly connect with one or more of the parcels "A", "B", "C", and "D", while others are near but not connected with any such parcel. It is apparent that the terrain along the coast is rugged. The evidence taken at the trial on the merits is not before us. Without a view of the premises and evidence concerning the lay of the land, it would be impossible to know to what extent if any the reserved rights do or could benefit

any of the parcels. We merely hold that the plaintiff Commission was entitled to present evidence of circumstances tending to show what if any special benefits accrue to the four parcels by reason of the access and crossing rights reserved to the defendants and what if any effect said reservations had upon the market value of the land not taken.

We now consider the other allegations of special benefits as to which the plaintiff claims the right to introduce evidence. They appear in the reply.

We first point out that evidence on certain issues must of necessity go to the jury regardless of the knotty problem as to the nature of special benefits.

In *Chapman v. Hood River,* 100 Or 43, 51, 196 P 467, the court quoted with approval from *Beekman v. Jackson County,* supra, in part, as follows:

"* * * 'The reasonable value of the land taken, the effect of the taking upon the remainder, the manner of the location of the road, the necessity it may occasion for the removal or building of fences, and any other material inconvenience or burden it may create, should be fairly considered, and the sum of the several items should be allowed the owner, subject to any reduction on account of *special* benefits he may derive therefrom.' "

Surely, if the manner of the location of the road may be shown by the defendants as bearing on damages, the plaintiff may rebut such evidence regardless of rules defining special benefits. To hold otherwise would be to split judicial hairs. Incidentally we do not approve of the implication in the statement quoted supra that damages are to be fixed separately as to each item and then added together. All of the items of damage and of special benefit are to be considered to-

gether in arriving at the amount if any of the depreciation of market value of the land not taken.

■ By way of summary we see that evidence will be admissible in behalf of the defendants to show "the manner, nature and extent" of the taking for a limited access highway, the separation of defendants' land into different tracts and the added inconvenience, if any, in going about and managing the property, and similar circumstances so far as they cause a depreciation in the fair market value of the land not taken, and defendants may show the extent of such depreciation. In like manner evidence will be admissible in behalf of the plaintiff Commission to show the beneficial effects, if any, of the rights of access and crossing which tend to minimize the damage, if any, which would accrue if the severance by a nonaccess highway were absolute and complete. *State v. Clevenger,* and *State v. Calkins,* both supra. The ultimate duty of the finder of the facts will be to consider all of this evidence in arriving at the net depreciation in value of the land not taken. The two cases last cited treat these rights of access as special benefits and we accept their authority upon that matter, but there is no mysterious virtue in the words "special benefits" when used in this context.

Coming to an attempted classification of benefits which are deemed special, we quote from 3 Nichols, Eminent Domain, 3d ed, § 8.62, p 39:

> "* * * Upon this subject there is a great diversity of opinion and more rules, different from and inconsistent with each other, have been laid down than upon any other point in the law of eminent domain. * * *"

We agree, and unfortunately the diversity may be observed in our own decisions which we will now review.

In *Oregon Central R. R. v. Wait,* supra, 3 Or 91 (Circuit Court) defendant moved for a new trial. The court denied the motion and approved the following instruction:

 " 'If the benefits to the land resulting from the proposed road are equal to the resulting damages to the land of the defendant, all that is to be assessed is the value of the land sought to be condemned.' "

The court said:

 "\* \* \* if constructing a road will injure him in one particular, but will benefit him in some other particular to an extent greater than his injury, I am unable to see the moral wrong, as between him and the builders of the road, in refusing to compel them to pay him for acts which do him more good than injury; aside from paying for land actually taken.

 \* \* \* \* \*

 "\* \* \* I am convinced that, if beyond the loss of the land taken, the defendant is not on the whole injured, but is in fact benefited, he cannot under this statute recover resulting damages for a proposed road the construction of which will as a whole be an actual benefit to him over and above all damages. \* \* \*"

To the same effect see *Willamet Falls C. & L. Co. v. Kelly,* supra, 3 Or 99 (Circuit Court). *Oregon Central R. R. Co. v. Wait,* 3 Or 428 was one of the earliest Supreme Court cases in this state. We quote from page 433:

 "\* \* \* The compensation is secured by the award of the jury in view of the whole case, and by the judgment of the court thereon. The issue was properly submitted by the court to the jury that the damages are to consist of the value of the land appropriated, irrespective of any additional value to it, etc., and then, if such appropriation in-

jures the other land of that owner, over and above the benefits or additional value of those lands, by the improvements by the corporation, an additional amount is to be awarded sufficient to cover such excess of injury over benefit, etc."

In these early cases there is much to commend the common-sense appraisal of the problem without technical distinctions concerning the nature of special benefits.

In *Putnam v. Douglas County*, 6 Or 328, the court for the first time hinted at the nature of special damages which may be set off. The jury was instructed as follows:

"'The jury will also take into consideration all special advantages the opening of the road will give to the premises of appellant, which appear, if any; as, for instance, the giving of an outlet to market to said premises, and the enhancement in value of the land taken.'"

The court, however, went beyond the rule of the earlier cases and held that the advantages which the proposed road will confer may be set off not only against damages to the land not taken, but also against the value of the land taken. There was a forceful dissent, and on this point, the majority holding is no longer the law.

In *Beekman v. Jackson County*, supra, 18 Or 283, this court stated that it was the duty of the jury to take into consideration any special benefits which the lands would receive but held that it did not appear whether the jury had in view a peculiar benefit or some general benefit which the owner would receive in common with others. All of the evidence was before the court and the court said it was unable to discover that there would be special benefits. The court also observed

that the lands were already accessible to a public road and the benefit from the new road was remote and speculative. It held that the court should have given the following requested instruction, a part of which reads as follows:

"'* * * Only such benefits should be allowed and considered by the jury as are peculiar to Beekman, the owner of the land taken by said road; and they should be such benefits as pertain to his ownership in and his enjoyment of the particular land taken for said public road, and not such benefits or advantages as may result to other lands owned by him, if any. * * *'"

The court said that the evidence showed that the jury did not limit its findings to special benefits. It must be remembered that in this case the jury had set off benefits against the value of the land taken, as well as against the remainder and had awarded the owner nothing. The judgment was reversed and remanded for a new trial. We make no criticism of the instruction approved by the court if applied to the damage or benefit to the land not taken. In considering the early cases it must be remembered that the taking for highway purposes was not then a taking in fee as it now is. *McQuaid v. Portland & V. Ry. Co.,* 18 Or 237.

Defendants rely upon *Coos Bay R. R. v. Nosler,* 30 Or 547, 48 P 361. This was not a condemnation action but was an action to collect on a contract whereby defendant and others agreed to contribute on conditions specified to the cost of construction of a railroad. The defendant asserted as a defense or set-off against the money owing by him to the plaintiff, that he had been damaged by reason of the fact that he owned considerable real property "in and about Coquille City" which he claimed would be enhanced in value if the road had

been fully constructed to Roseburg within the time required, and that he would have been able to have sold his holdings at a large profit. The court indicated that there was no clear standard by which such profits could be measured and that it could not reasonably be supposed that the railroad company would have in contemplation damages of that kind. It then cited by way of analogy the rule offsetting benefits against damages in eminent domain, and said:

> "* * * Whatever if peculiar or especial benefit might accrue or result to the lands of the party claiming damages may be offset, but remote or speculative benefits in anticipation of a rise in property for townsite purposes, or, generally, by reason of the proposed opening of a highway, construction of a railroad, or other improvements, cannot be considered. Such benefits are the common privilege of all the individuals of the community, and one cannot be permitted to profit by it more than another: * * *." *Coos Bay R. R. Co. v. Nosler,* 30 Or 547 at 556.

This case is distinguishable. The alleged special benefits claimed were those accruing to the "considerable real property in and about Coquille City" owned by defendant, and were not such as would be allowed in a highway condemnation case where the only special benefits are those accruing to the remainder of a single tract through or across which the highway is to run. The benefits claimed were such as flow from the building of a depot, or as result in benefit to an entire townsite, and were general in nature. Benefits from construction of a railroad across the property of an owner are in the nature of the case more remote and difficult to establish than benefits from highway construction.

In *Portland & O. C. Ry. Co. v. Ladd Estate,* 79 Or

517, 155 P 1192, the plaintiff brought suit to condemn a strip of land for a railroad through the Eastmoreland and Westmoreland additions owned by the defendant. In its reply the plaintiff alleged special benefits. No evidence of benefits was offered other than those arising from increased transportation facilities. The verdict fixed the value of the land taken and found that the damages to the residue did not exceed the special benefits. The defendant appealed from the judgment on the verdict. In reversing the case the court held that the only benefits that may be set off against damages are those which are special and *peculiar to the tract.* We have no criticism of the decision on the facts. The court did, however, by way of dictum, express approval of a statement by the Wisconsin court which would unduly restrict the scope of special benefits if applied in condemnation proceedings by the Highway Commission.

*Portland-Oregon City Ry. Co. v. Penney,* supra, was another case involving condemnation for a railroad. The trial court excluded evidence tending to sustain four so-called counterclaims on account of alleged special benefits and on appeal judgment was affirmed. This court first quoted a portion of LOL, § 6839, now ORS 772.055, which reads as follows:

"No condemnation of private property shall be made under ORS 772.010 to 772.020 or 772.030 to 772.050 until compensation is made to the owner thereof, irrespective of any increased value thereof by reason of the proposed improvement by such corporation, in the manner provided in ORS chapter 35." ORS 772.055.

The court said the statute means that in computing the damages to a tract of land by reason of the construction of the road across it, the corporation cannot be heard

to say that any increased value which may accrue to the land by reason of the facilities offered shall be "subtracted from the sum which would be compensation if the land were purchased for any other purpose than a railroad." The court by Justice McBRIDE expressed disapproval of the statutory rule, but followed it. We quote:

"The measure of damages is the actual cash market value of the strip taken and the depreciation in market value of that portion of the tract not actually included in the right of way, which damages are sometimes termed incidental damages; and it is in respect to the measurement of these that courts have experienced the greatest difficulty. To the ordinary mind, unhampered by precedent and unrestrained by statute, it would appear that, if the owner were paid the full market value of the strip taken, the value of his property being greatly increased by the improvement and by the facilities afforded for marketing the produce grown upon the ground not included in the strip, he would not be entitled to a single cent by way of damages because his land had been cut into two parcels instead of being left intact. This would appear to be the common-sense view of the matter, even if the lands of his neighbors should be equally enhanced in value; but the statute in this state and statutes and judicial decisions in other states have said that increase in the value of the property by reason of the construction of the road shall not be considered in estimating damages, and, in effect, require the jury to estimate all the inconveniences caused by the construction of the road and to eliminate the incidental benefits which are shared in common by the other members of the community. This seems to be the law in Oregon, and, while the writer follows it with unwilling feet, the courts are bound to recognize it until it is amended. In this view the court was entirely justified in withdrawing the first three counterclaims from the jury. As intimated

in Portland & O. C. Ry. Co. v. Ladd Estate, 79 Or. 517 (155 Pac. 1192), the benefits pleaded are shared in a greater or less degree by all of the community along the line of the proposed road; the difference being merely one of degree rather than of class. The last offset was not fully pleaded, in that it merely stated that defendants would be 'greatly benefited' without stating any amount or sum in which defendant would be so benefited."

The court obviously considered itself bound by the statute ORS 772.055 quoted supra, but that statute applies only to actions brought under ORS, Chapter 772 by public service corporations. It has no application to condemnation proceedings brought by the Highway Commission. It is therefore unnecessary to decide whether the provisions of ORS 772.055 mean that compensation for the land taken must be made irrespective of increased value thereof or that the depreciation in market value of the residue must be made irrespective of the increased value of that land. But see, *Oregon Central R. R. Co. v. Wait,* supra, 3 Or 91 at 98. The Penney case is not decisive of the case at bar.

*In Re Petition of Reeder,* 110 Or 484, 222 P 724, the question involved condemnation of a county road. The verdict found (1) the fair market value of the land taken, (2) the amount of damages sustained by the remainder, and (3) the amount of special benefits. The amount of the judgment was fixed by adding the value of the land taken to the amount of damages suffered by the remainder and deducting the amount found as benefits. In the case of each landowner the benefits found were less than the amount found as damages to the remainder, so that it was unnecessary for this court to determine whether benefits could be set off against the value of the land taken. We have discussed

that matter supra. Our present interest relates to the nature of special benefits. The landowners appealed and asserted that there was no evidence of special benefits and that general benefits could not be set off against damages. The court held that there was evidence "from which the jury might find that the lands of each would be specially benefited" and refused to weigh the evidence on that issue, it being for the determination of the jury. The court also held that the instructions given on special benefits were free from error. Examination of the original records in the files of this court discloses that the trial court instructed the jury to the effect that general benefits may not be set off against damages. We quote:

> "* * * general benefits consist of an increase in the value of land common to the community generally arising from the supposed advantages which will accrue to the community * * *. Special benefits are such as accrue to the property owners which are the direct and special result of the proposed road. * * * But if the benefit sustained is one which is not shared in common with the rest of the public then such benefit is to be considered as a proper set-off against alleged damages.
> * * * * *
> "* * * An increased value to the land founded upon the fact that a public highway is established directly upon the land, so that the owner can pass directly from one to the other, and so that he can have free and unobstructed ingress and egress from his land, if [sic] such a benefit as may be taken into consideration in reducing the damages sustained by the owner by reason of the location of the establishment of the road. * * *"

Again speaking of special benefits, the court instructed the jury, as follows:

> "* * * It must be founded on some increased use and useable value of the land as well as the

market and saleable value of the land, and not such as increases the market and saleable value alone. The increased value founded upon merely increased facility for travel and transportation by the public in general is not the kind of increased value which may be taken into consideration in reducing the damages to be awarded to the land owner.

\* \* \* \* \*

"In each of these cases you should ask yourselves that question, has the property owner received any special benefits, that is such a benefit that would be separate and distinct from that shared by the public generally. \* \* \*"

We have carefully examined all of the Oregon decisions bearing upon the nature of special benefits. Assuming that an accurate and detailed definition of special benefits is desirable and possible, those decisions leave much to be desired. We therefore turn to the decisions in other jurisdictions for clarification. In the following cases it is held that benefits resulting from the fact that the land fronts on the proposed road do not become general merely because other property abutting on the road may participate in similar benefits. *Abbott v. Cottage City,* 143 Mass 521, 10 NE 325; *Department of Highways v. Templeton,* 5 Tenn App 485; *Newberry v. Hamblin,* 157 Tenn 491, 9 SW2d 700; *Chase v. City of Portland,* 86 Me 367, 29 A 1104; *State v. Anderson,* 176 Minn 525, 223 NW 923; *Aswell v. City of Scranton,* 175 Pa St 173, 34 A 656; *Allen v. City of Charleston,* 109 Mass 243 (1872); *Wilson v. Greenville County,* 110 SC 321, 96 SE 301; *Aaronson v. United States,* 79 F2d 139; *Lewis v. Seattle,* 5 Wash 741 (1893).

Typical of the cases cited is the following which we

quote with approval from *Hall v. Commonwealth,* 235 Mass 1, 126 NE 49:

"The jury could find on the evidence which included the view, that the new highway afforded more convenient access to, and conferred a frontage on a much better and more desirable road. \* \* \* It is settled that benefits of this character are direct and special even if all the estates in the vicinity abutting on the street are similarly benefited. \* \* \* The benefit which cannot be set off is confined to 'that which comes from sharing in the common advantage and convenience of increased public facilities, and the general advance in value of real estate in the vicinity by reason thereof.' \* \* \*"

In *Wilson v. Greenville County,* 110 SC 321, 96 SE 301, supra, the court said:

"The enhancement in value of lands through which an improved highway is located is a benefit to the owner. \* \* \* The proposition is so well recognized that, in some circumstances, it is made the ground of assessing the owner to pay for it, at least in part. The benefits derived from such improvements are classed as general and special. The general are such as are enjoyed by all people in the community. The special are such as are peculiar to one or more persons by reason of the more favorable location of their lands with reference to the highway. Those who own lands immediately on a highway derive advantages which are not shared by others in the same community. These special benefits usually find concrete expression in a comparatively greater increase in the value of such lands, though that may not be, and often is not, the only special benefit which they enjoy. But certainly, to the extent that the benefits accruing to those who own lands on the highway exceed those of their neighbors whose lands are off the highway, they are special. A benefit that is limited in en-

joyment to one or more persons is special to him or them. Therefore the fact that all persons who own lands adjacent to the road enjoy special benefits does not make such benefits general. A special benefit to one tract on the highway does not become general, because a like benefit is enjoyed by many tracts that are also contiguous to the highway. The benefit accruing to each tract is special to it."

Again, it is well said that

"It is quite true that benefits may be special which are in a sense likewise general. In case the improvement made a large share or all of the property abutting thereon more accessible and convenient for use, then such benefits would not for that reason cease to be special simply because they were enjoyed by several or a large number of property owners in common. The test is not whether the improvement affects one or more owners by creating special advantages to their property; but whether the benefits are in fact such as add anything to the convenience, accessibility, and use of the property as contra-distinguished from benefits arising incidentally out of the improvement and enjoyed by the public generally." *Hempstead v. Salt Lake City,* 32 Utah 261, 90 P 397 (1907).

With reference to the allegation contained in the reply to the effect that construction of the highway would render three parcels of the defendants' remaining land adaptable, suitable and available for higher and better use, to-wit, for residential and subdivision purposes, and a fourth parcel for commercial uses, an opinion of the North Carolina court is of interest. The court said:

"* * * The fact that property could be cut into lots and sold was in evidence and a proper matter for consideration by the jury in estimating the benefits accruing to the plaintiff. This was not speculative, but practical." *Phifer v. Commis-*

*sioners of Cabarrus County,* 157 NC 150, 72 SE 852, 853.

This case should be considered in connection with our own decision in *State Highway Commission v. Deal,* 191 Or 661, 233 P2d 242. In the latter case the issue related to the value of the land actually taken for highway purposes, and we held that:

> "* * * On that issue it is competent to show that the land is available for subdivision. 'If, by reason of its surroundings, or its natural advantages, * * * or its intrinsic character, it is peculiarly adapted to some particular use, all the circumstances which make up this adaptability may be shown, and the fact of such adaptation may be taken into consideration in estimating the compensation.' * * *" 191 Or at 673.

In that case it was the landowner who was seeking to show adaptability for higher use in order to increase his compensation for the land taken. In the pending case the state seeks to show a similar adaptability for higher use of the land not taken resulting from the proposed improvement, as a special benefit to be set off against damages. The statement quoted is equally applicable in both situations. It is equally true, however, in both situations, that speculative evidence would be inadmissible, and though the circumstances showing adaptability may be shown, evidence that the property could be subdivided into a certain number of lots of certain dimensions and separately valued as to sales prices would as a matter of law be speculative and inadmissible. As to proof of availability for higher and better use, see also, *Lowe v. City of Omaha,* 33 Neb 587, 50 NW 760; *Louisiana Highway Commission v. Grey,* 197 La 942, 2 So2d 654; *State ex rel. State Highway v. Clevenger,* supra; *State v. Calkins,* supra.

In *Department of Public Works and Buildings v. Keck*, 330 Ill 39, 161 NE 55, the court took note of evidence to the effect that the lands not taken were substantially increased in value by the location of a hard surface road through them and that the jury therefore properly denied damages.

Finally we cite with approval the following:

"We think it clear on both reason and authority that a highway, such as was contemplated in this proceeding, presumptively confers upon adjoining land—on account of its physical relation to it—a special benefit; whether it does in fact in a given case (of the character of this) is for the jury." *State ex rel State Highway Commission v. Jones*, 321 Mo 1154 (1929), 15 SW2d 338.

In a later case the Missouri court said:

"We come now to the specific question: Does an improved street or highway, by reason solely of its physical proximity to adjacent lots or tracts of land, confer upon such lots or tracts a special benefit? Under exceptional circumstances, it may not; but that it ordinarily does is unquestionably the generally accepted view." *State ex rel. State Highway Commission v. Baumhoff*, 230 Mo App 1030 (1936), 93 SW2d 104.

We conclude that presumptively the proposed construction will result in some special benefits and that the existence and extent of such benefits are normally questions for the consideration of the jury upon all of the evidence and under proper instructions. It is only when the court can say as a matter of law that evidence offered to prove special benefits is so remote and speculative as to show no substantial basis for such a finding that the court can reject the evidence offered.

Since this case must be remanded for a new trial, it has been necessary to come to grips with the problem as to the nature of special benefits, but we should recognize the specific issue now before us. Plaintiff by its reply in effect offered to prove that special benefits will accrue to four parcels of defendants' land. The decision of the trial court was to the effect that no testimony would be received to show the alleged special benefits. We do not know what evidence would have been offered to support the allegations of the reply and therefore cannot declare that it would have been speculative. The broad ruling made at the opening of the trial could be upheld only if we could hold that no evidence of any kind could be offered which would show reasonable probability of special benefit. This we cannot do. We pause to consider the origin and nature of the confusion which has crept into this area of the law in our own and other jurisdictions. We start out with statutory provisions requiring the court in condemnation cases to ascertain the "damages" suffered by the owner. ORS 35.070, 366.375, 374.055. Upon the statutory provisions from the very beginning the courts have ingrafted the idea of special benefits to be set off against damages. So long as the courts were considering compensation from the standpoint of damages and benefits, there appeared to be no objection to the adoption of rules as to what kinds of damages and benefits may be considered, and the rule became established that "general benefits" cannot be considered even though they have enhanced the value of the property in question. But, contemporaneously with these developments there also became established the rule which this and many other courts have adopted, namely, that the compensation to which the landowner is entitled is measured by the deprecia-

tion if any in the fair market value of the remainder of the land by reason of the taking. Once this rule is adopted the question for the jury becomes, what was the fair cash market value before the taking, and what was or will be that value after the taking? In each instance the rule universally applied on questions of land value is "the amount which the land would bring if it were offered for sale by one who desired but was not obliged to sell and was brought by one who was willing but not obliged to buy." *Highway Commission v. Holt,* 209 Or 697, 308 P2d 181, and *Pape v. Linn County,* 135 Or 430, 296 P 65, both supra. Any competent evidence of matters not merely speculative which would be considered by a prospective vendor or purchaser or which tend to enhance or depreciate the value of the property is admissible. 31 CJS 883, Evidence, § 182; 30 CJS 163, Eminent Domain, § 430. Thus, when the courts are speaking in terms of damage and benefit they exclude evidence of general benefits although such benefits enhance the value of the property. *Petition of Reeder,* supra. But when they are speaking of market value they recognize the relevancy of any evidence not speculative which would affect market value. We find no logical reason for requiring an expert witness on real estate values to exclude from consideration any substantial element, be it plus or minus, which directly affects market value of the land whether or not it also affects the value of other lands.

Another consideration suggests that there are strange contradictions in our law. In *Schmid v. City of Portland,* supra, 83 Or 583, 163 P 1159, Justice HARRIS called attention to the resemblance between special benefits in condemnation cases and special benefits in street assessment cases. The analogy is

interesting. In street assessment cases the entire cost of an improvement may be assessed against the abutting property. The right to make such assessment rests on the theory that the property is benefited to the extent of the assessment. No fine distinctions are drawn between special and general benefits as every property owner knows to his sorrow.

In *Fisher v. City of Astoria,* 126 Or 268, 269 P 853, a street assessment case, this court held that the fact that the improvement may benefit the entire city does not prevent the city from assessing the cost against the adjacent property which enjoys a more intense benefit.

Notwithstanding these apparent inconsistencies we are constrained to yield to precedent. Justice Holmes had admonished us that "the life of the law has not been logic, it has been experience", and it appears that the earlier practice which set off both general and special benefits against damages has lost ground and is now retained in only one state, Indiana. 3 Nichols on Eminent Domain, § 8.6205, p 57. We therefore yield to the weight of authority, difficult as the rule may be in its application. We reluctantly hold that special benefits only may be set off against damages in fixing the amount of depreciation in market value of the lands not taken. The court should not, however, adopt a narrow or unreasonable definition of special benefits.

The Supreme Court of Massachusetts has succinctly said:

"There are two kinds of benefit; (1) the special and direct benefit arising from its own position upon the way itself; (2) the general benefit not arising from its location on the way, but from the facilities and advantages caused by the way, which

affect all estates equally. The first can be set off, the second cannot." *Hillbourne v. Suffolk,* 120 Mass 393, 21 Am Rep 522.

█ The rule to which we adhere is broadly stated in *Hempstead v. Salt Lake City,* 32 Utah 261, 90 P 397, as follows:

"Benefits are special which add anything to the convenience, accessibility and use of the property as distinguished from benefits arising incidentally out of the improvement and enjoyed by the public generally. The test is not whether it benefits one or more owners."

We may roughly summarize the benefits which the plaintiff alleges in its reply, as follows: A new modern road will be built on defendants' land. Access to it and across it will be given as alleged. Specified parcels now used for agriculture will be adaptable, suitable and available for higher and better uses, to-wit, for residential and subdivision purposes. Another parcel will be adaptable, suitable and available for the establishment of commercial ventures that cater to the traveling public. The amount of the alleged benefits is specified as to each of the four parcels.

██ Out of respect for the authorities certain limitations must be imposed upon the kind of evidence which may be received to show so-called special benefits which may be set off against so-called damages, in order to arrive at the amount of the depreciation, if any, in the fair market value of the land not taken. Evidence of general benefits may not be considered. Benefits which are common to the public or which the land of defendant shares in common with lands of others in the community which do not abut upon the highway may not be considered. "Speculative benefits" may not be considered nor can speculative damages, but

in reality it is not benefits or damages which are speculative. It is the evidence of benefit or damage. This is not a rule defining special benefits. It is merely an application of the universal rule that evidence offered to prove value of land must not be merely speculative.

"* * * Any competent evidence of matters, not merely speculative, which would be considered by a prospective vendor or purchaser, or which tend to enhance or depreciate the value of the property, is admissible. The character, location, and physical condition of the real estate, and the use to which it is put, may be placed before the jury, and evidence is admissible to show any probable use to which the land could reasonably be put, such as manufacturing, farming, railroad, or residential purposes, although it is not then being used for such purposes. However, speculative or remote ways in which the land could be used cannot be considered in determining its value." 31 CJS 883, Evidence, § 182.

Only such benefits as are or will be the proximate result of the improvement may be considered and only such benefits as may be shown to be reasonably probable. The issue of benefits is limited to the particular tract of land of which a portion is taken. Subject to these limitations the jury is entitled to consider the entire plan of improvement and the probable effect of the improvement upon the use and value of the land, and it may consider all of the evidence pro and con on that issue. They may consider evidence of improved outlet to market to said premises, of higher and better use, as for subdivision, residential or commercial purposes, frontage on a better road, modes of access, and in general any substantial evidence that the improvement will add to the convenience, accessibility, use and value of the land if such benefit is not shared by

nonabutting lands. The fact that other lands abutting on the improvement are also specially benefited is immaterial.

From the very nature of the nonaccess road which is proposed, the jury may consider what if any special benefits accrue to defendants' land with its rights of access, in view of the rarity of such rights as may appear from the evidence. With full appreciation of the difficulties involved in the submission of cases of this kind to the jury under the established rules, we have indicated, so far as possible, what those rules are. Since there is before us no specific offer of evidence but only a general statement as to the kind of evidence proposed to be offered, we can do no more.

The judgment is reversed and the cause remanded for a new trial conformable to this opinion.