Argued January 25, affirmed March 18, mandate recalled May 30,
reconsideration allowed June 25, mandate modified
by opinion July 29, 1974

# STATE HIGHWAY COMMISSION ET AL, *Appellants, v.* STOCKHOFF ET AL (No. 21342), *Respondents.*

519 P2d 1281

*Leslie B. Hampton,* Assistant Chief Trial Counsel, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*George H. Corey,* Pendleton, argued the cause for

respondents. With him on the brief was Corey, Byler & Rew, Pendleton.

Before Schwab, Chief Judge, and FORT and TANZER, Judges.

TANZER, J.

The State of Oregon brought this condemnation action to acquire a portion of defendants' acreage for the conversion of part of State Highway No. 6 (the Old Oregon Trail Highway) to a limited access highway. The property to be acquired is a strip of land on either side of the existing highway. The state's amended complaint alleged that the amount due defendants was $19,000. Defendants answered that just compensation was $100,000. The state appeals from a judgment entered on a jury verdict of $50,000, contending that the trial court erred in excluding certain evidence and refusing to give certain jury instructions relating to that evidence.

The state's first assignment of error raises the question of whether defendants' contract to sell rock to the highway contractor constitutes a special benefit, the value of which can be set off against damages to the remaining property. The evidence produced at trial showed that a gravel quarrying operation was conducted on a portion of defendants' property by the contractor and that the material taken from the quarry was used by the contractor in construction of the highway improvement. No quarrying operation had previously been conducted in that location.

Plaintiff's valuation witness testified, after stating his opinion as to the severance damage to defendants' remaining property, that the sale of rock

material to the contractor constituted a special benefit. Defendants' counsel objected to any testimony on that subject and the court sustained the objection, ruling that the valuation of the rock was not a special benefit. Thereafter, plaintiff presented and the court refused an offer of proof in which plaintiff's valuation witness testified that the demand for the rock changed the highest and best use of a portion of defendants' property to a material site, and that, in his opinion, this constituted a special benefit in the amount of $9,000. Plaintiff's valuation witness further testified that, if allowed to do so, he would offset the $9,000 special benefit against the severance damages to which he had previously testified.

A fundamental principle in the area of eminent domain is that the condemnee is entitled to be paid the difference between the market value of his property before and after the taking. 3 Nichols, Eminent Domain 64-65, § 8.6201 (1965). Different jurisdictions arrive at that result in various ways. In Oregon, the formula for computing just compensation is considered to be the value of the land taken plus the depreciation in value of the remaining area. *State Highway Com. v. Bailey,* 212 Or 261, 281, 319 P2d 906 (1957). The creation of a special benefit, i.e., any enhancement of the value of the remaining property which is not shared by the public generally, is one factor to be considered in determining the value of the remainder. If a special benefit is found, its value is to be set off against any damage to the remainder.

Plaintiff claims the gravel use to be a special benefit and defendants characterize it as a general benefit, i.e., one available to the general community. The issue, however, is whether the use was a cognizable

benefit at all, that is, an increment to the market value of the property arising from the improvement. We have concluded that the value of the rock sold to the contractor is not such a benefit.

■ The parties are agreed that the only market for the rock located on defendants' land is for the construction of the highway. Once the highway has been completed, the land will once again be used as range land. The opportunity to sell the otherwise unmarketable rock was a nonrecurring windfall. It constituted an immediate business opportunity for the property owner which terminated when construction terminated. It did not increase the market value of the remainder and was therefore not a relevant factor in the valuation testimony.[1] Exclusion of the offered evidence was therefore proper.

The state's other assignment of error is that the trial court erred in excluding evidence that defendants' right of access to the highway was limited prior to the condemnation.

The evidence showed that the conversion of the existing highway to a limited access highway would result in a diminution of defendants' access to the highway. After defendants' valuation witness had testified as to the extent and value of that diminution, he was asked on cross-examination whether he had considered the effect of a 1950 warranty deed from defendants' predecessors in interest to the state. The witness replied that he had not. The plaintiff offered

---

[1] Although there is no Oregon case on point, *see Arkansas State Highway Comm. v. Davis,* 434 SW2d 605 (Ark 1968); *Dept. of Highways v. McPherson,* 259 So 2d 33 (La 1972); *Minnesota Valley Railroad Co. v. Doran,* 17 Minn 188 (17 Gilfillan ed 162) (1871), all in accord. We find no cases contra.

the 1950 deed as an exhibit so that the court could interpret its language, and moved to strike testimony regarding damage to the remainder to the extent that the testimony included damages for rights which the state had acquired by contract in 1950. The plaintiff also made an offer of proof through its own valuation witness that the effect of the 1950 deed provision would be to eliminate all damages to defendants' right of access, and requested that the jury be instructed that it could give no damages for diminution of right of access to the highway. The offer was rejected.

The 1950 deed conveyed to the state a tract of land abutting on the old highway. The grantors reserved a right of access from the abutting property to the highway. However, the deed further provided:

> "Grantee, State of Oregon, shall have the right at its option to build at any future time at its sole cost, an outer highway within the right of way. Upon construction of such outer highway, all right of access to and from the highway, if any be herein specifically reserved, shall cease, but grantors, their heirs and assigns, shall have access to the outer highway. Said outer highway shall be connected to the main highway only at such point or points as the State of Oregon may designate."

The state contended that by virtue of that provision, defendants had agreed that any frontage road or "access road," wherever located, might be substituted for their direct access to the highway, and that they were therefore entitled to no damages for loss of access since they were in fact to have access to frontage roads. Defendants contended, on the other hand, that by the terms of the deed such agreement was limited to frontage roads built within the then-existing right of way, and since the access roads con-

templated by the state were not within that right of way, the provision of the 1950 deed had no application.

It was undisputed that the frontage roads to be constructed were not within the right of way conveyed in the 1950 deed. The trial court concluded that the deed spoke for itself, and that since the frontage roads were not constructed within the boundaries of the 1950 right of way, the provisions of the deed were immaterial to the issues being tried. The court therefore refused to allow any evidence concerning the effect of the 1950 deed.

■ We agree that the 1950 deed speaks for itself, and that defendants agreed to trade their existing right of access for access to an outer highway only if the outer highway were constructed within the right of way conveyed by the 1950 deed. The frontage roads were not constructed in the place contemplated, and therefore defendants were not barred from alleging and proving damages to their right of access. Since plaintiff moved to strike all testimony of damage to right of access, offered to prove that the effect of the 1950 deed was to eliminate totally such damage, and requested that the jury be instructed that they could give no award for such damage, the trial court was correct in its ruling. The potential restriction of access under the 1950 deed was not an exact equivalent of the new restriction of access and therefore cannot be used to cancel it out.

■ The basic proposition, again, is that fair compensation is the difference between the market value of the property before and after the taking. The fact that defendants' predecessors in interest had given the state an option to build a frontage road in the right of way and had agreed to accept access to that road as a substitute for access to the highway per se would be a

relevant factor in determining the "before" market value of the property, since a prospective buyer would likely be influenced by the existence of the option in determining the purchase price. Thus, evidence of the deed provision was relevant to the ultimate issue and should have been admitted for the jury to consider under appropriate instructions, if plaintiff had offered it on that basis. Since, however, he offered it to prove an erroneous proposition, error cannot be predicated upon the refusal of the trial court to allow it. *Downey v. Traveler's Inn*, 243 Or 206, 412 P2d 359 (1966).

Affirmed.

FORT, J., concurring.

In addition to the reasons set forth in the court's opinion, with which I am in agreement, I am additionally persuaded by a further factor.

The state, in its reply brief, referring to the 1950 deed, concedes "the frontage road clause applied only to the reserved accesses and did not apply to the reserved farm crossings. * * * [N]ot being covered by the clause, the farm crossings could not otherwise be closed without payment of just compensation."

Thus, the state's motion

"* * * to strike the damages to the remainder of the witness Rothrock on the basis that it is included in that damages, damages which are not convincible [sic] in this prodeecings [sic] and which are rights acquired by contract in 1950 * * *"

embraced factors—the farm crossings—which even on the state's theory, it did not acquire under the 1950 deed and for which it concedes compensation was due in this proceeding. The motion to strike, if I correctly understand its scope, by the state's own admission, thus was overbroad. The court correctly denied it.